IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARCHIE TINDELL, ) | |
| Plaintiff, ) | Civil Action No. 11-173 Erie |
| ) | |
| v. ) | |
| ) | District Judge Ambrose |
| COMMONWEALTH OF ) | |
| PENNSYLVANIA, DEPARTMENT OF ) | |
| CORRECTIONS, et al, ) | Magistrate Judge Baxter |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by the Medical Defendants [ECF No. 58, and renewed at ECF No. 198] be granted in its entirety. The Clerk of Courts should be directed to terminate Lucas, Maxa, and O'Rourke as parties to this action.

It is further recommended that Plaintiff's motion to seek discovery under Rule 56(d) [ECF No. 204] be DENIED.

**II.    REPORT**

**A.    Relevant Procedural History**

Plaintiff, an incarcerated individual representing himself, presented this civil rights complaint on August 15, 2011 by way of "removal" from the Forest County Court of Common Pleas. Plaintiff alleges that fifty-one named Defendants have violated his constitutional rights in numerous ways. The majority of the named Defendants are employees of the Department of

1

Corrections and are represented by the Office of the Attorney General. Additionally, Plaintiff named Matt Lucas, Dr. Robert Maxa, and Beverly O'Rourke (hereinafter referred to as the "Medical Defendants") as Defendants to this action.

As to the Medical Defendants, Plaintiff complains about the medical care and treatment he received during a self-imposed hunger strike in April of 2011. Plaintiff voluntarily refused to eat based upon his belief that his food was being tampered with following an incident in which Plaintiff claims that he saw a Correctional Officer spit tobacco on to his food tray. ECF No. 10, ¶ 54. Plaintiff claims that this medical treatment was so deficient as to be unconstitutional.

Plaintiff's Amended Complaint [ECF No. 10] is the operative complaint in this action. See ECF No. 190. The Medical Defendants have filed a motion to dismiss in response to the Amended Complaint. ECF Nos. 58, 198.

By Order of this Court filed July 25, 2013, Plaintiff was notified, pursuant to the requirements of Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), that this Court **may** convert a motion to dismiss into a motion for summary judgment. ECF No. 199.

In response to the motion to dismiss, Plaintiff has filed an "Affidavit to Seek Delay Desposition [sic] while Conducting Discovery" [ECF No. 204]. Plaintiff invokes Federal Rule of Civil Procedure 56(d) and seeks to have this Court stay its decision on the pending motion to dismiss while Plaintiff conducts discovery to ascertain facts essential to justify his opposition. A party seeking further discovery in response to a summary judgment motion must submit an affidavit specifying: 1) the particular information sought; 2) how, if uncovered, it would preclude summary judgment; and 3) why the information has not previously been obtained. See Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988).

Plaintiff explains that he intends to seek discovery as to "chronological medical records" and that

> Plaintiff suffered a serious medical need which has been diagnosed by a doctor as requiring needed treatment in which resulted where the delay or denial of treatment in unnecessary and wanton infliction of pain. Defendants knew of the serious medical needs which has been diagnosed in which medical records in their control to have actual knowledge of Plaintiff's conditions yet disregarded an excessive risk to the Plaintiff's health and safety. Such indifference was manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons which such a denial of reasonable treatment resulted in unnecessary suffering or risk of injury.

Id.

Plaintiff has failed to specify the specific information sought, or how the information would combat the current pending motion to dismiss.

Recently, Plaintiff filed another notice to appeal to the Third Circuit, this time appealing District Judge Ambrose's order denying his motion to certify an interlocutory appeal. Generally, the filing of a notice of appeal divests a district court of its jurisdiction over a case. See U.S. v. Wolfe, 2010 WL 1372448, at *1 n.1 (W.D. Pa. 2010) citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982). However, if the appeal is frivolous, as it is here, the district court retains jurisdiction over the matter. Id. citing U.S. v. Leppo, 634 F.2d 101, 105 (3d Cir. 1980).

The legal issues presented in the motion to dismiss are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the

court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("[W]e should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.'"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2) Motion to Dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).

See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C) The Exhaustion Requirement of the Prison Litigation Reform Act

The Medical Defendants move to dismiss based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, ___ F.3d ___, ___, 2013 WL 4504761, at *2 n.3 (3d Cir. Aug.26, 2013). "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 2013 WL 450476, at *3, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional

6

requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.[1] Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

Here, Defendants argue that it does not "appear from the allegations of the Complaint that Plaintiff exhausted his administrative remedies." ECF No. 59, page 6. Defendants explain:

> Furthermore, there is nothing in the Complaint to indicate any grievances were ever filed pertaining specifically to the Medical Defendants. Therefore, Plaintiff has not properly exhausted all available administrative remedies as to the Medical Defendants which constitutes a complete defense to this action.

Id.

Importantly, it is not a plaintiff's burden to affirmatively plead exhaustion. Small v. Camden County, ___ F.3d ___, ___, 2013 WL 4504761, at *2 n.3 (3d Cir. Aug.26, 2013); Jones

---

[1] The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004) ("prison grievance procedures supply the yardstick for measuring procedural default."). The grievance system laid out in the DC-ADM 804 controls here. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, it is a well-settled matter of law that the failure to exhaust under the PLRA must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).[2]

Accordingly, Plaintiff's failure to plead that he has complied with the PLRA's exhaustion requirement cannot serve as the basis of a dismissal.

### D. Plaintiff's Allegations against the Medical Defendants

The claims against the Medical Defendants are set forth at Count VI of the Amended Complaint:

> 117. Defendants … M. Lucas, Dr. Maxa, … CPRNB O'Rourke was [sic] deliberate indifference to the Plaintiff's serious medical needs, reckless disregards, when supervisor know or should have known, approved and condone it, or turn a blind eye for fear of wheat they might see, Plaintiff suffered an ongoing serious irreparable injury when their subordinates action was the adverse unwanton [sic] of infliction of pain, reckless disregard, willful malicious, sadiciously [sic] to cause serious injury in result beyond scope of this duties "ultra vires" in violation Medical Practices act of 1985, State Board of Medicine Regulation Act and Conduct, 28 U.S.C. § 1985(3), § 1986, Penns Const. Articles Tort Claim Assault/Battery, Fraudulent Conversion[.]
>
> 118. DOCS. Employee handbook B32# an employee including medical staff and counselors are required to report inmate abuse complaints or incidents to their immediate supervisors. Nurses was well inform [sic] to the nature of the officers conduct, medical department failure to prevent or abate an [sic] continuation of facts, omissions in the result to serious irreparable harm, injury, loss of weight [sic], dizziness, chronic pain, head, stomach, weakness shock, coma, death[.]

---

[2] Moreover, "the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim. Small, ___ F.3d at ___, 2013 WL 4504761, at *2 (emphasis in original) quoting Jones, 549 U.S. at 220-24.

119. Medical officials conduct was intentional [sic] deliberate to Plaintiff's serious needs by failure to give alternative means which would have if authorized could have eleviate [sic] unwanton [sic] infliction of pain by staff by tampering with food trays and had authority to prevent or abate.

120. Defendants … O'Rourke … had an affirmative duty … but failed adhered [sic] to the mandatory duties, Department of Corrections policies, procedures, state board regulation nurse/Medical Practice Act, which failed to respond through verbal response, requests, grievances, through other staff in concert by and through a common scheme plan, motive or design to injuries [sic] Plaintiff which showed a pattern of conduct.

121. There is a casual [sic] link between Smith, Lucas, Maxa, Simmons, Parlovechio, O'Rourke, Sherbine and prison officials Apadaca, Jones, Murin, Brigger, Chara, Studdard, Haggerty, as to proximate cause, Correctional Officers Wiess, Clouser, Griffin, as the Medical force behind the tampering and in concert to the tampering with Plaintiff trays:

> … (B) Medical department by common scheme, plan, motive or design to assist with prison official in their retaliatory, discriminative action with [sic] further the adverse actions by failure to comply with procedures in preserving further injuries. […]

1, 8, 14th U.S. Const. Amend., 28 U.S.C. § 1985(3), § 1986, Penna Const. Articles and Tort Claim, Ultra Vires[.]

122. The Plaintiff has suffered adverse actions from Defendants which caused the proximate result of the injuries imposed to Plaintiff which Medical Department and prison officials through a chain of command, through a common scheme, plan, motive, or design by falsifying records and information through DC ADM 17 (Adjustment Records) by non-medical staff in which the information became part of his medical record and $100 assess from Plaintiff account despite [sic] that Plaintiff never authorized to debit his account through accounting Department without authorized sienituke [sic]. Further adverse action Plaintiff is a diabetic insulin dependent in violation of American Disability Act of 1990[sic]/Rehabilitation Act of 1973, 29 U.S.C. § 706.

ECF No. 10.

### E. Eighth Amendment Claim

The Medical Defendants move to dismiss on the basis that Plaintiff has failed to state a claim upon which relief may be granted. In this regard, Defendants argue that Plaintiff has failed to: 1) plead the personal involvement of all three Defendants; 2) allege that he was suffering from a serious medical need; and 3) allege Defendants Lucas, Maxa, or O'Rourke exhibited deliberate indifference toward that serious medical need.

### 1) Personal Involvement of Lucas and Maxa

A thorough review of Plaintiff's lengthy and convoluted complaint reveals very few factual allegations against these three Defendants. Plaintiff has not made any allegation sufficient to factually support the personal involvement and/or acquiescence of these Defendants in the allegedly inadequate medical care. Plaintiff has not outlined any actual conduct by Lucas or Maxa in his medical treatment. Plaintiff only identifies Lucas as either the Correctional Healthcare Administrator or the PHS Administrator (ECF No. 10, ¶ 17) and Maxa as the PHS Medical Director (id. at ¶ 18). As to Defendant O'Rourke, Plaintiff alleges that she visited him in his cell on two occasions.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Dep't of Social Services, 436 U.S. 658 (1978). However,

10

"[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207.

Even if Plaintiff had adequately alleged that Lucas or Maxa were personally involved in the alleged constitutional violation, healthcare administrators are not liable in these circumstances. Non-medical prison officials, such as Health Services Administrators like Lucas and Maxa, are not

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236 quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 107457, at *5 (3d Cir.). In other words, a non-medical supervisory official may be held liable only if there was "knowledge of 'malicious' and 'sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-37.

In their capacities as the Healthcare Administrators, Defendants Lucas and Maxa are not deliberately indifferent if they failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals. See Spruill, 37 F.3d at 256. These Defendants' reliance on the opinion of other treating medical professionals even as Plaintiff grieved his complaints about the alleged inadequacies in his medical treatment through the administrative remedy

11

process does not indicate that Defendants possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon them. See Henderson, 2006 WL 3761998.

### 2) Personal Involvement of Nurse O'Rourke

As to Nurse O'Rourke, Plaintiff alleges that she visited him in his cell on April 29, 2011 to discuss his refusal to eat. ECF No. 10, ¶¶ 61-62. At that time, she provided him with an Ensure drink. Id. O'Rourke also educated Plaintiff as to the harmful effects of his continued refusal to eat and/or drink. Id. Plaintiff also alleges that O'Rourke visited him in his cell on May 19, 2011 to educate him about the harmful effects of his refusal to eat and/or drink. Id. at ¶ 67.

These allegations are thin as to O'Rourke's personal involvement in the alleged constitutional violation. However, in order to give the *pro se* Plaintiff the benefit of the doubt, this Court will further analyze his claim against O'Rourke.[3]

### 3) Serious Medical Need

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates

---

[3] Plaintiff has previously amended his complaint. The Amended Complaint does not contain any allegations which overcome Plaintiff's failure to state a claim which can be granted, and so any further attempt to amend the complaint as to O'Rourke should be denied as futile. See F.R.Civ.P. 15(a)(2) (stating that "the court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason-- such as […] futility of amendment ….-- the leave sought should, as the rules require, be freely given.").

v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at *3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Plaintiff has not alleged that he suffered from a serious medical need. Indeed, the Amended Complaint makes clear that Plaintiff voluntarily decided to embark on a hunger strike.

### 4) Deliberate Indifference

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 34, 38 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 987 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights."

Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F .2d 533, 575 n. 2 (3d Cir.1979).

The only allegations against O'Rourke do not rise to the level of deliberate indifference as O'Rourke educated Plaintiff twice about the dangers of his own actions and gave him an Ensure to drink. See Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Plaintiff has failed to state a claim against O'Rourke and the motion to dismiss should be granted.

### F. Conspiracy Claim

To the extent that Plaintiff's allegations (liberally construed) may sound in conspiracy, this claim fails.

In order to sufficiently allege a claim of a civil rights conspiracy, the complaint must specifically set forth: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. See Oatess v. Sobolevitch, 914 F.2d 428, 431 n.8 (3d Cir. 1990) citing Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). The allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation. See

Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming dismissal of conspiracy claims based upon mere suspicion and speculation).

As a general matter, § 1983 claims need not be pled with any greater particularity than any other claims (see Fed.R.Civ.P. 8), but conspiracy claims must be pled with sufficient particularity to provide the defendants with fair notice of the claims against them. Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 986 (E.D. Pa. 1994). As the Tenth Circuit has explained:

> When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action ... The pleadings standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as is the state court judge and prosecutor in the instant case.

Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir.), cert. denied, 513 U.S. 832 (1994). As pled, there is nothing in the Amended Complaint to factually support the elements of a conspiracy claim. See Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del.) quoting Phillips, 515 F.3d at 231 (at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."). The motion to dismiss should be granted.

Allowing any further amendment in this regard would be futile. Plaintiff's conclusory allegations do not present "any facts tending to show agreement [or] concerted action" between these three Defendants and others to support the alleged conspiracy. Instead, Plaintiff simply generally phrases his claims as a conspiracy. Pleading a conspiracy requires more than mere semantics. Plaintiff's allegations are insufficient to state a conspiracy claim against these Defendants.

### G. § 1985 and § 1986 Claims

Plaintiff has failed to state a claim under 42 U.S.C. § 1985 as he does not allege that Defendants entered into a conspiracy motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" (Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)) or that any of Defendants knew of the "wrongs conspired to be done … [and] neglect[ed] or refus[ed] to prevent" the wrongs (42 U.S.C. § 1986).

Accordingly, these claims against these Defendants should be dismissed.

### H. Supplemental Jurisdiction

As all of the federal claims against these Defendants should be dismissed, this Court should decline to exercise supplemental jurisdiction over the numerous state law claims against them. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("That power [of supplemental jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent [or supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by the Medical Defendants [ECF No. 58, and renewed at ECF No. 198] be granted in its entirety. The Clerk of Courts should be directed to terminate Lucas, Maxa, and O'Rourke as parties to this action.

It is further recommended that Plaintiff's motion to seek discovery under Rule 56(d) [ECF No. 204] be DENIED.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See <u>Brightwell v. Lehman</u>, 637 F.3d 187, 194 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 11, 2013