IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARCHIE TINDELL,<br>    Plaintiff, | Civil Action No. 11-173 Erie |
| v. | District Judge Ambrose |
| COMMONWEALTH OF<br>PENNSYLVANIA, DEPARTMENT OF<br>CORRECTIONS, et al,<br>    Defendants. | Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by the Commonwealth Defendants [ECF No. 210] be GRANTED. The Clerk of Courts should be directed to close this case.

**II.    REPORT**

    **A.    Relevant Procedural History**

Plaintiff, an incarcerated individual representing himself, presented this civil rights complaint on August 15, 2011 by way of "removal" from the Forest County Court of Common Pleas. Plaintiff alleges that numerous named Defendants have violated his constitutional rights in numerous ways. The majority of the named Defendants[1] are employees of the Department of

---
[1] Plaintiff has named the Department of Corrections itself, as well as the following employees as Defendants to this action: John Wentel; Debra Sauers; Mr. Tice; M.D. Overmyer; S.L. Satterlee; PA Ennis; T. Riskus; E. Apodaca; Murin; Jones; Studdard; Gilara; Haggerty; Regal;

1

Corrections and are represented by the Office of the Attorney General.² As relief in this action, Plaintiff seeks both compensatory and punitive monetary damages, as well as various forms of injunctive and declaratory relief.³

---

Krasczynski; Clouser; Griffin; Weis; Jackson; Culver; A. Plaska; K. Reisinger; Major Drexler; CHCA Kim Smith; Chief Psychologist Simmon; Security Captain Mongiluzzo, G. Chiles; Counselor Schill; Officer McNaughton; Officer Irwin; Officer Anderson; Officer Blankenship; Officer Nix; Burton; Lt. Brugger; RN Williams; and RN Johnson.

² Besides the Department of Corrections' employees, Plaintiff named Matt Lucas, Dr. Robert Maxa, and Beverly O'Rourke as Defendants to this action. These Medical Defendants have previously been dismissed from this case. See ECF Nos. 209, 221.

³ Plaintiff seeks:
1) a declaratory judgment
    a. stating that "the result of discrimination, retaliation, conspiracies, deliberate indifference, ultra vires";
    b. long term confinement resulted created sufficient degree of social isolation and reduce environmental stimulation by such acts by prison officials;
    c. Defendant was deliberately indifference by failure to supervise;
    d. Defendant violation of Act Religious Land Use and Institutionalized Person Act of 2000
    e. Defendant violated due process, 28 U.S.C. § 1985(3) and Equal Protection of laws.
2) A permanent injunction against Smith, Sauers, Tice, and Overmeyer to reinstate all diabetic medication and proper diet.
3) A permanent injunction "ordering Sauers, and Overmeyer to expunge all misconducts, release Plaintiff from punitive housing or administrative, transfer immediately as administrative transfer."
4) A permanent injunction "ordering John Wetzel that all prisoners who is NOI/UNOI to have services in all Department of Corrections prisons separate from other Muslim sects, services, literature outside representatives."
5) A permanent injunction "ordering all Defendant, their servant, agents, employees, where Plaintiff resides within the Department of Corrections jurisdiction from abusing, harassing, threatening, having contract through a third party, stalking, filing a false misconduct, tampering with food adjustment status sheet (DC16-E); withholding mail readjustment in DCADM11.2.1 (P.A.C.T) prohibiting to access of paging system, main law library, access to law library."
6) Various compensatory and punitive damages.

ECF No. 10, pages 22-24.

Plaintiff's Amended Complaint [ECF No. 10] is the operative complaint in this action. See ECF No. 190. The Commonwealth Defendants have filed a motion for summary judgment (ECF No. 210) and, despite being given the opportunity to do so, Plaintiff has failed to file an opposition to the pending motion for summary judgment (ECF Nos. 215, 217).

There is currently an appeal pending in this case. On August 16, 2013, Plaintiff filed a notice to appeal to the Third Circuit, appealing District Judge Ambrose's order denying his motion to certify an interlocutory appeal. ECF No. 207. Generally, the filing of a notice of appeal divests a district court of its jurisdiction over a case. See U.S. v. Wolfe, 2010 WL 1372448, at *1 n.1 (W.D. Pa. 2010) citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982). However, if the appeal is frivolous, as it is here, the district court retains jurisdiction over the matter. Id. citing U.S. v. Leppo, 634 F.2d 101, 105 (3d Cir. 1980).

The legal issues presented in the motion for summary judgment are ripe for disposition by this Court.

### B.   Standards of Review

#### 1) *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("[W]e should recognize that a habeas corpus petition prepared by a prisoner

3

without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.'"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2) Motion for summary judgment

Federal Ruled of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the

4

nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C) Summary of Plaintiff's Claims against the Commonwealth Defendants

Plaintiff's Amended Complaint is nearly unintelligible. It is lengthy and difficult to follow. After thorough review of the complaint, this Court summarizes the factual allegations upon which Plaintiff bases the above listed causes of action.

1) Plaintiff claims that Correctional Officer Nix breached a duty of care by mishandling personal property during a search of Plaintiff's cell on March 4, 2011, causing a book to fall and split into two. Id. at ¶¶ 45-49.[4]

2) Plaintiff alleges that in retaliation for the grievance he filed about the March 4th cell search, Weiss conducted a cell search on March 6, 2011. During that

---

[4] Issues referenced in Grievance 356836.

5

cell search, Plaintiff alleges that Weiss went through his legal materials for pending criminal and civil actions. Id. at ¶ 50.[5]

3) Plaintiff claims that Weiss conducted a cell search on April 16, 2011, while Plaintiff was showering, and Plaintiff claims he later discovered legal paperwork was missing. Id. at ¶ 53.[6]

4) Officer Krafczynski returned institutional mail to Plaintiff on March 11, 2011, because Plaintiff did not include his name and inmate number on the mailing. Id. at ¶ ¶ 51-52.[7]

5) Plaintiff claims that on April 21, 2011, there was tobacco spit and residue in his food when Clouser served the lunch tray. Instead of returning the lunch tray, Plaintiff kept it and showed it to Superintendent Sauers and Deputy Britton a week later. Id. at ¶ ¶ 54-56. Clouser issued a misconduct [B308786] to Plaintiff on April 21, 2011, for refusing to obey an order stemming from Plaintiff's refusal to return the food tray.

6) In April of 2011, Plaintiff began to refuse to eat due to alleged tampering with his food trays. On April 24, 2011, RN Williams came to Plaintiff's cell because he had missed nine meals. Plaintiff was seen by Dr. Simons the following day. From late April through late May of 2011, Plaintiff was seen by various medical and psychiatry staff, but Plaintiff alleges that these staff members did not follow protocol and remove him from his cell to medical. Id. at ¶ ¶ 58-69.[8] Furthermore, Plaintiff claims that Officer Reagle caused "false information" (that Plaintiff was taking his tray because he was drinking a dehydration package) into Plaintiff's 17X record, and then medical staff considered this information true. Id. at ¶ ¶ 67-68.

7) On May 24, 2011, Plaintiff was extracted from his cell and moved to a psychiatric observation cell because he was not eating. Id. at ¶ ¶ 70-74. Plaintiff claims that he did not resist, yet he was tasered by an unknown officer during the extraction. Plaintiff was issued a misconduct [A926693] by Lt. Brugger for failure to obey an order. Plaintiff states that Bogardus (not a Defendant), Burton, Anderson, Irwin, Regal Blankenship, and Griffin witnessed the tasering.

---

[5] Issues referenced in Grievance 357435.

[6] Issues referenced in Grievance 362153.

[7] Issues referenced in Grievance 357806.

[8] Some issues referenced in Grievances 364464, 364465, and 365135.

8) Plaintiff claims that there was "something" in his lunch tray delivered by Clouser on June 9, 2011, but Plaintiff received a new lunch tray from another officer. On June 11, 2011, Plaintiff claims that Clouser harassed him by grinning and saying "enjoy" as he delivered Plaintiff's lunch tray. On June 13, 2011, Clouser seemed to "select" a certain food tray for Plaintiff. Id. at ¶¶ 75-79. Following the June 11th incident, Plaintiff wrote to Superintendent Sauers requesting a separation from Clouser. Plaintiff complains that although Sauers referred Plaintiff's request to Security Captain Mongeluzzo, Sauers did not discuss the request with Plaintiff herself.[9]

9) Plaintiff alleges that on June 14, 2011, Sgt. Haggerty confiscated three legal envelopes following a search of Plaintiff's legal materials. Id. at ¶¶ 80-83.[10] When the legal materials were returned to Plaintiff on June 17th, some of the materials were missing. Officer Burton charged Plaintiff with destroying, altering, and damaging property in Misconduct B101080. Officer Culver served the misconduct on Plaintiff, but did not provide Plaintiff with a confiscation slip. Plaintiff mentioned the failure to provide a confiscations slip to Major Drexler. Id. at ¶¶ 85, 90.

10) Plaintiff claims he received a false misconduct [A926648] on June 14th from Officers Culver and McNaughton. The misconduct charged Plaintiff with refusing to return his food tray, but Plaintiff claims that he did not receive a food tray that evening. Plaintiff claims that Regal and Robinson came to his cell on June 17th to inspect the food tray but it was not there. Id. at ¶¶ 93-96.

11) Plaintiff alleges that he discussed the foregoing events involving his food trays with Counselor Schill on June 30, 2011. Plaintiff claims that because he expressed his negative opinion about her coworkers, Schill issued a retaliatory misconduct [A602863] accusing him of threatening an employee with bodily harm. Id. at ¶¶ 97-100.

12) Plaintiff claims that Hearing Examiner Plaska denied him witnesses and evidence for his misconduct hearing on B101080. Id. at ¶¶ 85-92.

13) Plaintiff claims that Hearing Examiner Reisinger dismissed without prejudice the contraband misconduct he received on June 14th, but still sanctioned him for refusing to obey an order without any evidence. Id.

Plaintiff separates his factual allegations into six legal causes of action. **Cause of Action I** (raised against Defendants Wetzel, Sauers, Tice, Overmyer, Satterlee, Ennis, Drexler and

---

[9] Issues referenced in Grievances 368748, 369848, 369099, and 369958.

[10] Issues referenced in Grievances 369288 and 369844.

7

Mongeluzzo) is based upon a "mandatory" duty of care in the execution of government policy under 42 Pa.C.S. § 3803[11]. Construed liberally, Plaintiff seems to be accusing these Defendants of misapplying subjective criteria, being biased and exercising discretion in decisions to continue Plaintiff's Administrative Custody status and to issue disciplinary reports. Plaintiff alleges that Defendants' policies were deficient in that they allowed for the falsifications of records motivated by racial bias and retaliation. ECF No. 10, ¶¶ 101-109.

**Cause of Action II** does not mention any current Defendant but references a Central Office statewide meeting on May 5, 2005, in which Superintendent Harry Wilson discussed the lockdown and transfer of Nation of Islam ("NOI") members. Id. at ¶ 110. **Cause of Action III** is presumably related to the second cause of action, and generally complains that (unnamed) Defendants used a chain of command or a common scheme, motivated by retaliation and racial bias, to violate Plaintiff's Equal Protection rights through the falsification of records and information. Id. at ¶ 111.

**Cause of Action IV** contains several claims, including:

- Defendants Wetzel, Sauers, Tice, Overmeyer and Mongeluzzo failed to respond to grievances, requests and notices (id. at ¶ 112);

- Defendants Chiles, Schill, Apodaca, Murin, Jones, Brugger, Gillara, Stoddard and Haggerty retaliated and/or were deliberately indifferent by condoning or inspiring subordinates to injure Plaintiff through "their acts and omission" (id. at ¶ 113);

- Defendants Weiss, Clouser, Culver, Griffin, Jackson, Krafczynski, Reagle, Irwin, Anderson, Blankenship, Niznik and McNaughton caused Plaintiff to suffer physical and irreparable harm by tampering with his food and destroying his personal property (id. at ¶ 114).

**Cause of Action V** (which is titled in the complaint as Cause of Action VI) attempts to state an Eighth Amendment deliberate indifference claim against CHCA Smith, Dr. Simons and

---

[11] Plaintiff claims that this mandatory duty of care arises under 42 Pa.C.S. § 3803, a non-existent statute.

8

the previously-dismissed medical Defendants for failure to report abuse and for not providing him with alternative means of sustenance due to the alleged food tampering. Furthermore, Plaintiff complains that Defendants Smith, Simons, Tice, Sauers and Overmeyer, as well as the Lieutenants and Sergeants, condoned or had actual knowledge of the alleged food tampering and failed to take action to protect him. Id. at ¶¶ 117-123.

At **Cause of Action VI** (which is titled in the complaint as Cause of Action IV), Plaintiff brings a claim against Hearing Examiners Plaska and Reisinger for the denial of his due process rights. Id. at ¶¶ 123-24.

### D) The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Defendants move for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under
> section 1983 of this title ... by a prisoner confined in any jail, prisons,
> or other correctional facility until such administrative remedies as
> are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[12] The requirement that an inmate

---

[12] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d at 270, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e

9

exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[13]

### 2) The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and

---

agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[13] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### a) The Grievance System

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days[14], and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. Spruill, 372 F.3d at 234.

### b) The Misconduct Appeal System

The misconduct appeal process is much the same as the administrative remedies process. The DC-ADM 801 appeal process consists of three separate levels of review. First, the inmate who has been found guilty of a misconduct charge may appeal to the Program Review Committee for initial review within fifteen days of the hearing and the Program Review Committee must respond within seven days. Second, the inmate must timely appeal the decision

---

[14] DC-ADM 804(f) – (j) provides that at the Final Review level, a failure to provide all required documentation will result in dismissal of the appeal.

11

of the Program Review Committee to the Facility Manager within seven days, and again the inmate receives a response within seven days. Finally, the inmate must submit his appeal to the Chief Hearing Examiner's office within seven days and he will receive a response therefrom within seven days.

### 3) Analysis of Exhaustion

In support of the motion for summary judgment, Defendants have provided this Court with evidence in regard to Plaintiff's use of the administrative remedy process, as well as the misconduct appeal process.

The record before this Court reflects that Plaintiff has not properly exhausted a single grievance or appealed any misconduct related to any of the causes of action raised in this case. ECF No. 213-2, Declaration of Dorina Varner, Chief Grievance Officer, pages 9-13. While the evidentiary record reflects that Plaintiff filed numerous grievances related to the claims raised herein (see footnotes, infra), Plaintiff failed to properly exhaust any of the pertinent grievances through the final level of appeal. Id. at page 12. Furthermore, Plaintiff did not appeal any of the allegedly unconstitutional misconducts to even the first level of appeal. Id. at page 13, ¶¶ 96-100. In both regards, the evidence establishes that Plaintiff has failed to comply with the exhaustion requirement of the PLRA.

In the face of a well-supported motion for summary judgment, the nonmovant (here, Plaintiff Tindell) must come forward with specific facts in opposition to the motion for summary judgment. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 327. Plaintiff has failed to provide any evidence (or any argument) in opposition to the evidence provided by Defendants in support of their motion for summary judgment. Accordingly, the motion for summary judgment should be

granted in favor of Defendants as Plaintiff has failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion for summary judgment filed by the Commonwealth Defendants [ECF No. 210] be GRANTED. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: April 15, 2014